UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
MAURICE PELT,

                Plaintiff,

    -against-

CITY OF NEW YORK; NEW YORK CITY
HOUSING AUTHORITY; OFFICER JAMES
O'BRIEN; and SERGEANT VANCE MERRICK,

                Defendants.
------------------------------------X

**MEMORANDUM AND ORDER**

11-CV-5633 (KAM)(CLP)

**KIYO A. MATSUMOTO, United States District Judge:**

          On November 17, 2011, plaintiff Maurice Pelt ("Plaintiff") commenced this action for damages against the City of New York ("the City"), the New York City Housing Authority ("NYCHA"), and "Does 1-10," alleging claims pursuant to 42 U.S.C. § 1983, the New York State Constitution, New York state statutory and common law, and New York City statutory law. (ECF No. 1, Complaint dated 11/17/11.)  On January 10, 2012, Plaintiff filed an Amended Complaint, making slight revisions to his factual allegations. (ECF No. 7, First Amended Complaint dated 1/10/12 ("FAC").)  On June 12, 2012, with the City's consent, Plaintiff filed a Second Amended Complaint, adding as defendants Officer James O'Brien and Sergeant Vance Merrick (together, with the City, the "City Defendants"). (*See* ECF No. 21, Stipulation of the City dated 6/12/12; ECF No. 22, Second Amended Complaint dated 6/12/12 ("SAC").)

Presently before the court are the City Defendants'
motion for judgment on the pleadings pursuant to Federal Rule of
Civil Procedure 12(c) and NYCHA's motion to dismiss Plaintiff's
Second Amended Complaint[1] for failure to state a claim upon which

---

[1] On July 27, 2012, while the parties were briefing Defendants'
Rule 12 motions against the Second Amended Complaint, Plaintiff, without
requesting leave of the court, filed a Third Amended Complaint, seeking to
add as individual defendants NYCHA employees Emma Nelson, Donald Godwin, and
Edith Atkins-John. (ECF No. 28, Third Amended Complaint filed 7/27/12
("TAC").) By Minute Order dated July 12, 2013, the court directed Plaintiff
to file a status letter informing the court whether Plaintiff had any
authority, or NYCHA's consent, to file the Third Amended Complaint. (Minute
Order dated 7/12/13.) On July 19, 2013, Plaintiff filed a letter motion for
leave to file his Third Amended Complaint *nunc pro tunc*. (ECF No. 41, Motion
for Leave to File Third Amended Complaint ("Pl. Mot. to File TAC").) In that
motion, Plaintiff asserts that NYCHA's counsel orally agreed to permit
Plaintiff to add the individual NYCHA employees as defendants and that this
oral consent was reiterated implicitly in a July 11, 2012 e-mail between
counsel. (*Id.* at 1; *see also* Pl. Mot. to File TAC, Exh. 1, e-mail from
NYCHA's Counsel to Plaintiff's Counsel dated 7/11/12 ("7/11/12 E-mail").)
NYCHA opposes Plaintiff's motion for leave to file his Third Amended
Complaint on the ground that NYCHA did not provide Plaintiff with written
consent to add the three NYCHA employees as individual defendants in this
action. (ECF No. 43, NYCHA's Opposition to Pl. Mot. to File TAC ("NYCHA
Opp.").)

Pursuant to Federal Rule of Civil Procedure 15, a party may amend
its pleading once as a matter of course, and in all other cases, must obtain
either "the opposing party's written consent or the court's leave." Fed. R.
Civ. P. 15(a). Because Plaintiff has already amended his pleading once as a
matter of course (*see generally* FAC), has not obtained NYCHA's written
consent to file his Third Amended Complaint, and is not entitled to leave to
amend his pleading yet again, the court denies Plaintiff's motion to file his
Third Amended Complaint *nunc pro tunc*. First, Plaintiff has not obtained
NYCHA's *written* consent to amend his pleading by adding the individual NYCHA
employees as defendants. As Plaintiff concedes, the July 11, 2012 e-mail
from NYCHA's counsel "does not repeat the consent [Plaintiff's counsel]
received over the phone." (Pl. Mot. to File TAC at 1.) Indeed, in that e-
mail, NYCHA's counsel merely indicates that NYCHA will "accept service [o]n
behalf of" the employees and explains that Plaintiff may "still have to move
to amend the complaint to add them." (7/11/12 E-mail.) NYCHA's counsel would
not have advised Plaintiff to file a motion to amend the Second Amended
Complaint if NYCHA consented to the addition of the NYCHA employees as
defendants because such a motion would be unnecessary if Plaintiff had
NYCHA's written consent. *See* Fed. R. Civ. P. 15(a)(2). Second, the court
declines to grant Plaintiff leave to file a Third Amended Complaint at this
late stage because granting such leave would prejudice NYCHA and because
Plaintiff has provided no satisfactory explanation for the undue delay in his
request to amend his pleading. *See McDraw, Inc. v. CIT Grp. Equip. Fin.,
Inc.*, 157 F.3d 956, 962 (2d Cir. 1998) ("[T]he district court plainly has
discretion to deny leave to amend where the motion is made after an

relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 23, NYCHA's Rule 12(b)(6) Motion to Dismiss ("NYCHA Mot."); ECF No. 24, NYCHA's Memorandum in Support of Motion to Dismiss ("NYCHA Mem."); ECF No. 31, NYCHA's Reply ("NYCHA Reply"); ECF No. 33, City Defendants' Rule 12(c) Motion for Judgment on the Pleadings ("City Defs. Mot."); ECF No. 34, City Defendants' Declaration in Support of Rule 12(c) Motion ("City Defs. Decl."); ECF No. 35, City Defendants' Memorandum in Support of Motion for Judgment on the Pleadings ("City Defs. Mem."); ECF No. 36, City Defendants' Reply ("City Defs. Reply"); ECF No. 37, Plaintiff's Memorandum in Opposition ("Pl. Opp.").)

The court grants NYCHA's and the City Defendants' (collectively, "Defendants") respective motions as set forth below, dismisses Plaintiff's federal § 1983 claims with prejudice, and declines to exercise supplemental jurisdiction over Plaintiff's remaining state and city law claims.

---

inordinate delay, no satisfactory explanation is made for the delay, and the amendment would prejudice the defendant." (internal quotation marks omitted)). Notably, Plaintiff filed his Third Amended Complaint over one month after Defendants had already served their dispositive Rule 12 motions against the Second Amended Complaint and failed to seek leave to file his Third Amended Complaint *nunc pro tunc* until nearly ten months after the Rule 12 motions were fully briefed. Although the court is mindful that Rule 15(a)(2) provides that leave to amend should be freely granted "when justice so requires," the court refuses to subject Defendants to costly and timely dispositive motion practice only to then permit Plaintiff to move the target and add additional NYCHA employees as defendants, thereby requiring additional motion practice as to the Third Amended Complaint. Doing so would be unfair to Defendants and would be an inefficient use of judicial resources. In any event, even if the court permitted Plaintiff to add the individual NYCHA employees as defendants in this action, Plaintiff's claims against those defendants would be dismissed for the reasons set forth herein.

## BACKGROUND

The following facts are drawn from Plaintiff's Second
Amended Complaint, the nonconclusory allegations of which are
assumed to be true for purposes of Defendants' motions, from
documents integral to or incorporated by reference into the
Second Amended Complaint, and from exhibits within the purview
of judicial notice. *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d
419, 422 (2d Cir. 2011); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d
104, 110-11 (2d Cir. 2010); *In re Aegon N.V. Sec. Litig.,* No.
03-CV-603, 2004 WL 1415973, at *5 (S.D.N.Y. June 23, 2004).

The City Defendants and NYCHA attach several exhibits
to their respective Rule 12 motions, and Plaintiff likewise
attaches exhibits to his Opposition to those motions. (*See* City
Defs. Decl., Exhs. A-F; NYCHA Mot., Exhs. A-G; Pl. Opp., Exhs.
1-3.)  The court may properly consider these exhibits without
converting Defendants' Rule 12 motions into Rule 56 summary
judgment motions with two exceptions: (1) the Redacted Notes
from Gwendolyn Phillips' NYCHA File, attached as Exhibit F to
the City Defendants' Declaration, and (2) the Declaration of
Plaintiff Maurice Pelt, attached as Exhibit 1 to Plaintiff's
Memorandum in Opposition. (*See* City Defs. Decl., Exh. F,
Redacted Notes from Gwendolyn Phillips' NYCHA File ("Redacted
Notes"); Pl. Opp., Exh. 1, Plaintiff's Declaration ("Pl.
Decl.").)  Because the Redacted Notes and Plaintiff's

4

Declaration are not attached to, incorporated by reference into, or integral to the Second Amended Complaint and are not within the purview of judicial notice, the court declines to consider these two exhibits in ruling on Defendants' motions. *See Novie v. Vill. of Montebello*, No. 10-CV-9436, 2012 WL 3542222, at *9 (S.D.N.Y. Aug. 16, 2012) ("[I]t is improper for a court to consider declarations and affidavits on a motion to dismiss." (citing cases)).  The remaining exhibits, which are either documents already filed on the docket in this action[2] or documents within the purview of judicial notice,[3] have been incorporated into the factual and procedural background set forth below.

---

[2] Exhibits A and B of the City's Declaration are the Second Amended Complaint and the Docket Sheet of this action, respectively. (*See* City Defs. Decl., Exhs. A-B.)  Exhibits A and B of NYCHA's Motion are the First Amended Complaint and NYCHA's Answer to the First Amended Complaint, respectively. (*See* NYCHA Mot., Exhs. A-B.)  Exhibit 3 of Plaintiff's Opposition is the Third Amended Complaint. (Pl. Opp., Exh. 3.)  The court may consider these documents but notes that the Second Amended Complaint, rather than the First or Third Amended Complaint, is the operative pleading for purposes of Defendants' motions.

[3] It is well settled that "'[a] court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'" *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998)).  Moreover, a court may also consider "public documents of which the plaintiff has notice." *Brodeur v. City of New York*, No. 04-CV-1859, 2005 WL 1139908, at *3 (E.D.N.Y. May 13, 2005) (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991)).  Upon careful review, the court finds that it may take judicial notice of Exhibits C through E of the City Defendants' Declaration, Exhibits C through G of NYCHA's Motion, and Exhibit 2 of Plaintiff's Opposition. (City Defs. Decl., Exhs. C-E; NYCHA Mot., Exhs. C-G; Pl. Opp., Exh. 2.)

I.   **Plaintiff's Eviction and State Court Proceeding**

Plaintiff lived with NYCHA tenant Gwendolyn Phillips for many years in Apartment 5c (the "Apartment") of the Van Dyke Houses, a NYCHA-owned housing complex located at 395 Livonia Avenue in Brooklyn, New York. (*See* SAC ¶¶ 12-14.)  On or about April 16, 2010, NYCHA filed an eviction action against Ms. Phillips, the tenant of record, who thereafter signed a notice of intent to vacate, returned her keys to NYCHA, and surrendered the Apartment in or around July 2010. (*See* SAC ¶ 12; Pl. Opp., Exh. 2, NYCHA's Eviction Notice Against Gwendolyn Phillips ("Eviction Notice"); City Defs. Decl., Exh. C, Decision/Order of Judge Oymin Chin dated 8/23/10 ("Chin Order") ("Gwendolyn Phillips, tenant of record[,] vacated and surrendered possession of [the premises on] 7/14/2010 as evidenced by a surrender agreement."); City Defs. Decl. Exh. E, Notice of Intent to Vacate before Judge Mulin (noting that Gwendolyn Phillips "signed a Notice and intent to vacate and turned in her keys").) Although Ms. Phillips vacated the premises, Plaintiff remained in the Apartment until August 19, 2010. (SAC ¶¶ 14, 17, 19.) Plaintiff alleges that, on that date, NYPD police officers and NYCHA employees "threatened to use force to arrest and evict him if he did not leave the premises," despite Plaintiff's protests that he never received an order of eviction. (*Id.* ¶¶ 14-17.)

6

Plaintiff was never permitted to return to the Apartment after August 19th. (*See id.* ¶ 19.)

The following day, Plaintiff filed for an order to show cause in Kings County Civil Court, requesting that he be restored to possession of the Apartment, and Judge Oymin Chin issued the order to show cause and scheduled a hearing. (*See id.* ¶ 18; City Defs. Decl., Exh. D1, Order to Show Cause in Lieu of Notice of Petition to Restore Possession dated 8/20/10 ("OTSC")); City Defs. Decl., Exh. D2, Verified Petition in Support of Order to Show Cause ("OTSC Pet."); City Defs. Decl., Exh. D3, Affidavit in Support of Application to Proceed as Poor Person ("IFP Aff.").) Pursuant to the order to show cause, by Order dated August 23, 2010, Judge Oymin Chin denied Plaintiff's petition to be restored to possession of the Apartment on the ground that Plaintiff, who was "not the tenant of record," had "no independent right to possession of the NYCHA apartment." (Chin Order; *see also* SAC ¶ 19.) In reaching this determination, Judge Chin explained that "Gwendolyn Phillips, tenant of record[,] vacated and surrendered possession" of the Apartment in July 2010 and that "[i]t would be futile to restore [Plaintiff] to have him evicted in another proceeding." (Chin Order.) Although Plaintiff filed a notice of appeal from Judge Chin's Order on August 23, 2010, Plaintiff ultimately abandoned his appeal and instead commenced the instant action in federal

court. (City Defs. Decl., Exh. D4, Notice of Appeal from Chin
Order.)

## II.  <u>Plaintiff's Allegations and Claims</u>

Plaintiff alleges that NYCHA and the City Defendants
worked in unison to unlawfully evict Plaintiff, even though
NYCHA and the City Defendants "had no authority to remove" him
and "knew they should not have evicted him." (SAC ¶¶ 19-20.)
Plaintiff further alleges that the City and NYCHA encouraged
such unlawful conduct by maintaining a policy and practice of,
with deliberate indifference, failing to properly sanction or
discipline police officers and municipal employees, who violate
constitutional rights or who conceal such violations of
constitutional rights. (*See id.* ¶¶ 27-28.)  Plaintiff claims
that, as a result of Defendants' intentional, malicious,
reckless, and bad faith misconduct, he was deprived of his
property without due process and suffers from emotional
distress, nightmares, panic attacks, mental anguish, and severe
bouts of anger. (*Id.* ¶¶ 19, 21-23, 25.)

Based on the foregoing allegations, Plaintiff asserts
the following § 1983 claims against Defendants for violations of
his constitutional rights under the Fourth, Fifth, and
Fourteenth Amendments: a due process claim, an excessive force

claim, an abuse of process claim, and a conspiracy claim.[4] (*See id.* ¶¶ 1-2, 17, 19, 25, 29, 33-37; Pl. Opp. at 1.)   In addition to these federal claims, Plaintiff alleges that Defendants violated his rights under the New York constitution, state statutory and common law, and municipal statutory law. (*Id.* ¶¶ 38-70.)   Plaintiff requests compensatory and punitive damages against Defendants for these claims. (SAC, Prayer for Relief ¶¶ 1-10.)

## **STANDARD OF REVIEW**

"The standard for deciding a motion pursuant to Rule 12(c) 'is identical to that of a Rule 12(b)(6) motion for failure to state a claim.'" *Parker Waichman LLP v. Gilman Law LLP*, No. 12-CV-4784, 2013 WL 3863928, at *3 (E.D.N.Y. July 24, 2013) (quoting *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001)).   To survive a Rule 12(b)(6) motion to dismiss, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 65 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).   Although the court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving

---

[4] Plaintiff also asserted a conspiracy claim pursuant to 42 U.S.C. § 1985 in his Second Amended Complaint but has since abandoned that claim. (ECF No. 45, Plaintiff's Letter in Support of Conspiracy Claim dated 7/26/13.)

party," *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007), Plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Indeed, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (alterations in original) (internal quotation marks omitted).  For the reasons set forth below, the court dismisses Plaintiff's federal § 1983 claims against NYCHA and the City Defendants with prejudice and declines to exercise supplemental jurisdiction over the remaining state and city law claims.

## DISCUSSION

### I.  Plaintiff's Federal § 1983 Claims

In their respective motions, NYCHA and the City Defendants raise several preliminary procedural defenses, arguing that Plaintiff's claims are barred by collateral estoppel, *res judicata*, and the *Rooker-Feldman* doctrine.[5]  As a

---

[5] In a supplemental letter brief dated August 12, 2013, NYCHA raises an additional basis for dismissal of Plaintiff's Second Amended Complaint: namely, that this court should abstain from adjudicating this action pursuant to *Younger v. Harris*, 401 U.S. 37 (1971) because Plaintiff's appeal from Judge Chin's August 23, 2010 Order was never formally dismissed. (ECF No. 52, NYCHA Letter Brief dated 8/12/13 ("NYCHA Ltr. Br."), at 2.)  The court finds that abstention is unwarranted for two reasons.  First, entertaining NYCHA's newly raised argument at this late stage would be unfair to Plaintiff.  NYCHA could have and should have asserted this abstention defense in its motion to dismiss but failed to do so.  Second, the court is

threshold matter, the court must first address whether the *Rooker-Feldman* doctrine requires dismissal of Plaintiff's federal § 1983 claims because the *Rooker-Feldman* doctrine "implicates the court's subject matter jurisdiction." *Done v. Wells Fargo, N.A.*, No. 12-CV-4296, 2013 WL 3785627, at *5 n.5 (E.D.N.Y. July 18, 2013); *see also Lance v. Coffman*, 549 U.S. 437, 439 n.1 (2007) ("*Rooker-Feldman* concerns a district court's subject matter jurisdiction."). By contrast, the court need not reach Defendants' additional arguments that Plaintiff's claims are barred by the preclusion doctrines of collateral estoppel and *res judicata* because Plaintiff's Second Amended Complaint fails to state a plausible § 1983 claim for the reasons set forth below. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005) ("Preclusion, of course, is not a jurisdictional matter.").

---

hesitant to abstain from adjudicating the instant action based on NYCHA's unsupported assertion that Plaintiff's "appeal from Judge Oymin Chin's August 23, 2010 Order has never been formally dismissed." (*Id.*) NYCHA has provided no documentary support for this eleventh-hour assertion, and the court is therefore unable to determine whether abstention is warranted on the current record.

**A.    The *Rooker-Feldman* Doctrine**[6]

The *Rooker-Feldman* doctrine "stands for the proposition that 'lower federal courts possess no power whatever to sit in direct review of state court decisions.'" *Done*, 2013 WL 3785627, at *6 (quoting *Atl. Coast Line R.R. Co. v. Bhd. Of Locomotive Eng'rs*, 398 U.S. 281, 296 (1970)).  In the Second Circuit, the following four requirements must be satisfied for the *Rooker-Feldman* doctrine to apply: (1) "the federal-court plaintiff must have lost in state court"; (2) "the plaintiff must complain of injuries caused by a state court judgment"; (3) "the plaintiff must invite district court review and rejection of that judgment"; and (4) "the state-court judgment must have been rendered before the district court proceedings commenced." *E.g.*, *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005) (internal quotation marks omitted).

The *Rooker-Feldman* doctrine presents no impediment to this court's subject matter jurisdiction over Plaintiff's § 1983 claims because the second requirement is not satisfied:

---

[6] Although NYCHA and the City Defendants have asserted their *Rooker-Feldman* defenses in their respective Rule 12(b)(6) and Rule 12(c) motions, the court notes that the appropriate vehicle for a *Rooker-Feldman* defense is a Rule 12(b)(1) motion. *Done*, 2013 WL 3785627, at *5 n.5 (citing *Alliance for Envtl. Renewal Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 n.6 (2d Cir. 2006)); *see also Lance*, 549 U.S. at 439 n.1 (noting that *Rooker-Feldman* "concerns a district court's subject-matter jurisdiction"). Defendants' failure to invoke Rule 12(b)(1) is immaterial because the court is "independently obligated to determine whether it has subject matter jurisdiction" and therefore considers the applicability of the *Rooker-Feldman* doctrine regardless of which rule Defendants have invoked. *Done*, 2013 WL 3785627, at *5 n.5; *see also* Fed. R. Civ. P. 12(h)(3).

Plaintiff does not complain of injuries caused by a state court
judgment.  In reaching this determination, the court is guided
by the Second Circuit's "formula" in *Hoblock*: "a federal suit
complains of injury from a state-court judgment, even if it
appears to complain only of a third party's actions, when the
third party's actions are produced by a state-court judgment and
not simply ratified, acquiesced in, or left unpunished by it."
*Id.* at 88.  What *Hoblock* makes clear is that "the applicability
of the *Rooker-Feldman* doctrine turns not on the *similarity*
between a party's state-court and federal-court claims . . . but
rather on the *causal relationship* between the state-court
judgment and the injury of which the party complains in federal
court." *McKithen v. Brown*, 481 F.3d 89, 97-98 (2d Cir. 2007)
(citing *Hoblock*, 422 F.3d at 87).  Indeed, "a plaintiff who
seeks in federal court a result opposed to the one he achieved
in state court does not, for that reason alone, run afoul of
*Rooker-Feldman*." *Hoblock*, 422 F.3d at 87.  As such, "a suit
asking a federal court to 'den[y] a legal conclusion' reached by
a state court could nonetheless be independent for *Rooker-
Feldman* purposes." *Id.* (alteration in original).

        Applying these principles, the court finds that
Plaintiff's federal claims do not complain of injuries caused by
a state court judgment.  It is true, as Defendants argue, that
Plaintiff's § 1983 claims, and particularly his procedural due

process claim, may ask this court to effectively deny a legal conclusion reached by Judge Chin — in particular, Judge Chin's ruling that Plaintiff had no possessory interest in the Apartment and therefore no right to be restored to the premises. It is also true that Judge Chin's Order is related to Plaintiff's § 1983 claims stemming from his allegedly unlawful eviction.  But Plaintiff does not allege or argue that the injuries for which he seeks monetary relief were *caused by* or executed pursuant to Judge Chin's state court Order, which merely denied Plaintiff's request to be restored to the Apartment on the ground that Plaintiff lacked a possessory interest in that Apartment.  To the contrary, Plaintiff predicates his § 1983 claims on injuries caused by Officer O'Brien and Sergeant Merrick's alleged actions and threats, all of which occurred before Plaintiff sought relief in Civil Court.

Attempting to supply the causal link between Judge Chin's Civil Court Order and Plaintiff's alleged injuries, NYCHA contends that Plaintiff seeks monetary relief not "only for the period of August 19, 2010 (when he was evicted) to August 23, 2010 (when Judge Chin issued her ruling)" but also for damages incurred after Judge Chin's Order through the present and that Plaintiff therefore complains of injuries caused by Judge Chin's Order. (NYCHA Mem. at 10.)  NYCHA's argument, however, relies on the logical fallacy that any injuries suffered after Judge

14

Chin's Order must have been caused by that Order.  The court declines to adopt such *post hoc ergo propter hoc* reasoning.

As pled in his Second Amended Complaint, Plaintiff's § 1983 claims seek relief for alleged injuries caused by the unconstitutional conduct of NYPD officers and NYCHA employees, who allegedly denied him due process, abused legal process, utilized excessive force during the course of Plaintiff's eviction, and conspired to violate his constitutional rights. That Plaintiff's eviction and the officers' alleged unlawful actions were left undisturbed by Judge Chin's Order does not convert that Order into the cause of Plaintiff's asserted injuries.[7]  This is especially true for Plaintiff's excessive force claim, which is predicated solely on the actions of Officer O'Brien and Sergeant Merrick before Plaintiff commenced his state court proceeding.  Judge Chin's Order did not authorize Plaintiff's removal or Officer O'Brien and Sergeant Merrick's actions in connection therewith but rather denied Plaintiff's request to be restored to possession of the

---

[7] Furthermore, even accepting NYCHA's assertion that the damages incurred after Plaintiff's state court proceeding were somehow caused, in whole or in part, by Judge Chin's Order, the court would only lack jurisdiction over Plaintiff's federal claims to the extent that those claims are based on injuries suffered after, and therefore caused by, Judge Chin's Order.  This would not prevent the court from considering Plaintiff's § 1983 claims, such as his excessive force claim, predicated on alleged injuries caused by officer misconduct predating his state court action. *McKithen*, 481 F.3d at 98 ("[A] party is not complaining of an injury 'caused by' a state-court judgment when the exact injury of which the party complains in federal court existed *prior* in time to the state-court proceedings, and so could not have been 'caused by' those proceedings.").

Apartment, and, at most, "simply ratified, acquiesced in, or left unpunished" the allegedly unconstitutional conduct of NYPD officers and NYCHA employees during Plaintiff's eviction. *Hoblock*, 422 F.3d at 88.

The court acknowledges that Plaintiff's due process claim presents a more difficult *Rooker-Feldman* question. As NYCHA argues, Plaintiff's due process claim arguably "invit[es] this court to review the wisdom of [Judge Chin's] decision, and is asking that, ultimately, a jury decide the correctness of any determination that he had no right to possession of the premises." (NYCHA Mem. at 9.) Even if this is correct, Plaintiff's procedural due process claim, as pled in the Second Amended Complaint and as articulated in his Opposition, does not appear to complain of injuries caused by any state court judgment. Plaintiff alleges that his procedural due process rights were violated when Officer O'Brien and Sergeant Merrick deprived Plaintiff of his property (the Apartment) by evicting him without prior notice or an order from any court. (SAC ¶ 16 ("[Plaintiff] certainly never got an order of eviction.").) This distinguishes Plaintiff's due process claim, which is in any case meritless as explained below, from other cases in which courts have prohibited unlawful eviction claims on *Rooker-Feldman* grounds where the plaintiff's eviction was brought about or carried out pursuant to a state court order or judgment. *See,*

16

*e.g.*, *Morris v. Sheldon J. Rosen, P.C.*, No. 11-CV-3556, 2012 WL
2564405, at *4 (E.D.N.Y. July 2, 2012) ("The state court
judgment *brought about* [the plaintiff's] subsequent eviction,
which could not have happened absent the judgment." (emphasis
added)); *Bey v. Jamaica Realty*, No. 12-CV-2141, 2012 WL 1634161,
at *2 (E.D.N.Y. May 9, 2012) ("Here, plaintiff's claims are
directly related to injuries stemming from determinations made
by the state court regarding eviction . . . ."). Here, unlike
in *Morris* and *Bey*, the alleged removal of plaintiff could have
happened, and allegedly did happen, absent Judge Chin's Civil
Court Order. Indeed, Plaintiff does not allege that his removal
was brought about by, or executed pursuant to, Judge Chin's
Order or that his injuries stemmed from that Order.

Consequently, the *Rooker-Feldman* doctrine does not
prohibit this court from exercising subject matter jurisdiction
over Plaintiff's federal § 1983 claims. In exercising its
jurisdiction, however, the court finds that Plaintiff's § 1983
claims fail to state a claim upon which relief can be granted.

**B.  Failure to State a Claim**

To state a claim under 42 U.S.C. § 1983, Plaintiff
must allege (1) that the challenged conduct was "'committed by a
person acting under color of state law,'" and (2) that such
conduct "'deprived [Plaintiff] of rights, privileges, or
immunities secured by the Constitution or laws of the United

States.'" *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010)

(quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)).

"Section 1983 itself creates no substantive rights; it provides

only a procedure for redress for the deprivation of rights

established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d

Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S.

808, 816 (1985)).  Plaintiff's Second Amended Complaint, which

consists of vague, general, and conclusory allegations, fails to

state a plausible claim for relief under § 1983 against any of

the Defendants.

### 1.   Claims Against Individual Defendants Officer O'Brien and Sergeant Merrick

As the City Defendants note in their motion for

judgment on the pleadings and in their Amended Answer, and as

the docket in this action confirms, Officer O'Brien and Sergeant

Merrick were not properly and timely served with process

pursuant to Federal Rule of Civil Procedure 4.[8] (City Defs. Mem.

at 2 n.2, 14; ECF No. 40, City Defendants' Amended Answer to SAC

at 1 n.1; *see generally* Docket.)  In any event, the court finds

that Plaintiff's due process, excessive force, and abuse of

process claims, each of which will be discussed in turn below,

are plainly meritless and fail as a matter of law.

---

[8] Although Plaintiff filed an Amended Summons on July 31, 2013 as to Officer O'Brien and Sergeant Merrick, (ECF No. 46, Amended Summons dated 7/31/13), Plaintiff has not filed proof of service of the Amended Summons or the Second Amended Complaint on either officer, (*see generally* Docket).

### a.   Procedural Due Process

To sustain a procedural due process claim under the Fourteenth Amendment, Plaintiff must allege "that he: (1) had a protected liberty or property interest and (2) was deprived of that interest without due process." *Ferrari v. Cnty. of Suffolk*, No. 10-CV-4218, 2013 WL 4017022, at *7 (E.D.N.Y. Aug. 6, 2013) (internal quotation marks omitted); *Roman-Malone v. City of New York*, No. 11-CV-8560, 2013 WL 3835117, at *3 (S.D.N.Y. July 25, 2013) ("To state a claim for a violation of procedural due process, Plaintiff must allege that []he was deprived a protected interest in liberty or property, without adequate notice or opportunity to be heard.").  Because Plaintiff has failed to adequately plead that he possessed a constitutionally protected property interest[9] and was afforded due process even if he was deprived of such a property interest, Plaintiff's due process claim is meritless and must be dismissed for failure to state a claim upon which relief can be granted.

### i.   Deprivation of Property Interest

It is well established that "the threshold question in adjudicating [a] due process claim is whether [Plaintiff] possessed a liberty or property interest." *Leroy v. N.Y. City Bd. of Elections,* 793 F. Supp. 2d 533, 537 (E.D.N.Y. 2011).

---

[9] The court need not address any potential deprivation of Plaintiff's liberty interests as Plaintiff does not allege such a deprivation in his Second Amended Complaint. (*See generally* SAC.)

"Property interests are not created by the Constitution, but instead, are created and defined by existing rules or understandings 'stemming from an independent source,' which source supports a 'legitimate claim of entitlement.'" *Barnes v. Pilgrim Psychiatric Ctr.*, 860 F. Supp. 2d 194, 201 (E.D.N.Y. 2012) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). Here, Plaintiff alleges that Officer O'Brien and Sergeant Merrick deprived him of his property without adequate process by unlawfully evicting him from the Apartment.[10] (*See* SAC ¶¶ 14-19, 25; Pl. Opp. at 3-5.) Plaintiff's procedural due process claim rests on the unsupported presumption that Plaintiff enjoyed a property interest in the Apartment during his eviction in August 2010. (See SAC ¶ 14 ("[W]hile lawfully dwelling in his home . . . , plaintiff heard what sounded like drilling . . . .").) The bald allegations in Plaintiff's Second Amended Complaint, however, are alone insufficient to raise a plausible inference that Plaintiff was a lawful tenant or otherwise had a constitutionally protected property interest in the Apartment, thereby entitling him to constitutional due process. Even liberally construed, the Second Amended Complaint

---

[10] Plaintiff also appears to allege that "[a]s a result of his eviction, [he] lost several [sic] of his property." (SAC ¶ 19.) To the extent that Plaintiff alleges that he was deprived of any property interest other than his purported property interest in the Apartment, the court finds that such allegations are vague, conclusory, and speculative and therefore fail to sustain a plausible due process claim for relief against any of the Defendants. The Second Amended Complaint fails to articulate what other property Plaintiff lost as a result of the allegedly unlawful eviction or how he was deprived of that unidentified property without due process of law.

lacks any nonconclusory facts to support Plaintiff's naked
assertion that he lawfully resided in the Apartment after Ms.
Phillips vacated and surrendered the premises in or around July
2010.

Perhaps recognizing the deficiency in his own
pleading, Plaintiff, for the first time in his Opposition,
elaborates upon the bare assertions alleged in his Second
Amended Complaint and specifies that he was a "licensee"[11] of the
Apartment and was therefore entitled to legal process, including
ten-days notice, before his eviction at the hands of Officer

---

[11] By failing plausibly to allege or argue that he was a tenant of
the Apartment, and by instead claiming that he was a licensee at the time of
his eviction, Plaintiff appears to concede that he was not in a "landlord-
tenant relationship" with NYCHA within the meaning of N.Y. Real Prop. Acts.
Law § 711. (*See* SAC; Pl. Opp. at 3, 5); *see also Park v. Auto. Realty Corp.*,
No. 94-CV-4451, 1998 WL 40199, at *4 (S.D.N.Y. Jan. 30, 1998) ("A license[]
does not create a landlord-tenant relationship . . . ."); *100 W. 72nd St.
Assocs. v. Murphy*, 545 N.Y.S.2d 901, 905 (N.Y. Civ. Ct. 1989) ("A licensee is
not a tenant and does not acquire the rights of a tenant by the mere granting
of the license."). This concession is consistent with the Notice of Eviction
attached to Plaintiff's Opposition: Plaintiff was not listed as one of the
tenants of the Apartment on the Notice of Eviction issued to Ms. Phillips,
further confirming that Plaintiff had no possessory right over the Apartment
as a tenant. (*See* Eviction Notice.)
   Plaintiff's cursory assertion in his Opposition that he "paid
rent every month and created a landlord-tenant relationship with Ms.
Phillips" does not render him a tenant of the Apartment or establish that he
was in a landlord-tenant relationship with NYCHA. (Pl. Opp. at 3; *see also
id.* at 5 ("[P]laintiff paid half [the] lease . . . .").) Notably, Plaintiff
does not allege in his Second Amended Complaint that he paid rent to either
Ms. Phillips or NYCHA to occupy the Apartment; nor does Plaintiff allege that
NYCHA accepted or ultimately received these unspecified rent payments.
Having failed to allege such facts in his Second Amended Complaint,
Plaintiff's vague and conclusory assertions – advanced for the first time in
his Opposition – that he paid rent to Ms. Phillips to occupy the Apartment
are not entitled to the assumption of truth and cannot form the basis of any
purported possessory right in the Apartment as a tenant or otherwise. In any
case, under New York law, an "occupant's payment of rent, in and of itself,
does not create a tenancy where none was contemplated," as is the case here.
*Starrett City, Inc. v. Smith*, 889 N.Y.S.2d 362, 364 (N.Y. App. Term 2009)
(citing *Sullivan v. Brevard*, 66 N.Y.2d 489 (1985)).

O'Brien and Sergeant Merrick. (Pl. Opp. at 3 ("Plaintiff was a licensee as he was invited to stay in the residence by Ms. Phillips."); *id.* at 5 ("[P]laintiff is not a squatter or trespasser but rather a licensee and due process was required to evict him.").)

Plaintiff's belated attempt to characterize himself as a "licensee" is unavailing for several reasons. First, Plaintiff's Second Amended Complaint is bereft of any factual allegations that would render plausible Plaintiff's conclusory assertion that he was a licensee with any property interest in the Apartment. (*See generally* SAC.) Notably, the word "licensee" appears not even once in the Second Amended Complaint. Moreover, Plaintiff has failed to allege in his Second Amended Complaint that Ms. Phillips authorized him to occupy the Apartment after she vacated and surrendered. Nor has Plaintiff alleged, or cited to any authority for the proposition, that his status as a licensee survived after Ms. Phillips vacated the property in or around July 2010.[12] The

---

[12] New York courts have long held that "if there is a lessee, and he has created an under-lease, *or any other interest*, if the lease is forfeited, then the under-lessee, or the person who claims under the lessee, loses his estate as well as the lessee himself." *E.g.*, *N.Y. Rys. Corp. v. Savoy Assocs., Inc.*, 239 A.D. 504, 506–07 (N.Y. 1933) (emphasis added) (internal quotation marks omitted); *Jaynet Drug Corp. v. Sheraton-Astor Corp.*, 158 N.Y.S.2d 344, 350 (N.Y. Sup. Ct. 1956) ("It is the well settled rule of law that when an underlying lease is terminated either by the ending of its natural term or by the exercise of a cancellation clause contained therein providing for earlier termination, that any subleases are similarly terminated."). Thus, even assuming Plaintiff was a licensee because Ms. Phillips invited him to reside in the Apartment, Plaintiff's license and any

court therefore does not accept the truth of these last-minute allegations and refuses to permit Plaintiff to cure the deficiencies in his Second Amended Complaint by pleading new facts in his Opposition. *E.g.*, *K.D. ex rel. Duncan v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 209 n.8 (S.D.N.Y. 2013) ("Plaintiffs cannot amend their complaint by asserting new facts or theories for the first time in opposition to Defendants' motion to dismiss."); *Thomas v. City of New York*, No. 12-CV-5061, 2013 WL 3810217, at *3 (E.D.N.Y. July 23, 2013) ("It is well established that plaintiffs cannot amend their complaint by asserting new facts or theories for the first time in opposition to Defendants' motion to dismiss." (internal quotation marks omitted)).

Second, even accepting Plaintiff's newly-raised, self-serving, and conclusory assertion that he was a licensee of the Apartment at the time of his eviction in August 2010, Plaintiff nevertheless lacks any constitutionally secured property interest in the Apartment entitling him to due process. Under

---

other derivative property rights in the Apartment, if any, expired when Ms. Phillips voluntarily surrendered the Apartment, turned in her keys, and vacated the premises. *See Munro v. Prescott*, No. 02-40122, 2002 WL 1610505, at *2 (N.Y. Civ. Ct. June 25, 2002) ("A licensee relationship can expire . . . or end when the licensor is no longer entitled to possession of the property." (citing N.Y. Real Prop. Acts. Law § 713(7)); *Murphy*, 545 N.Y.S.2d at 905 ("RPL Section 235-f provides that no occupant, without written consent of the landlord, acquires any right to continue occupancy in the event the tenant vacates the premises or acquires any other rights of tenancy. A licensee is an occupant under RPL Section 235-f."); *cf. Ostensen v. Suffolk Cnty.*, 378 F. Supp. 2d 140, 148 (E.D.N.Y. 2005) ("Plaintiff's license had expired when the home was transferred to the state of Mr. Capucci after his death.").

New York law, it is well settled that a "licensee acquires no possessory interest in property." *P & A Bros., Inc. v. City of New York Dep't of Parks & Recreation*, 184 A.D.2d 267, 269 (N.Y. App. Div. 1992) (citing *Napier v. Spielman,* 127 A.D. 567 (N.Y. App. Div. 1908), *aff'd*, 90 N.E. 1162 (N.Y. 1909)); *see also Gladsky v. Sessa*, No. 06-CV-3134, 2007 WL 2769494, at *8 (E.D.N.Y. Sept. 21, 2007) ("'It has long been the rule in New York that a licensee, as opposed to a tenant . . . , cannot maintain an action for wrongful ejection.'" (quoting *Carter v. Helmsley-Spear, Inc.,* 861 F. Supp. 303, 334 (S.D.N.Y. 1994))); *Ostensen v. Suffolk Cnty.*, 378 F. Supp. 2d 140, 147-48 (E.D.N.Y. 2005) ("New York law states that a servant or licensee acquires no possessory interest in property . . . ." (internal quotation marks omitted)), *aff'd*, 236 F. App'x 651 (2d Cir. 2007) (summary order); *City Enters., Ltd. v. Posemsky*, 708 N.Y.S.2d 230, 231 (2d Dep't 2000) ("A licensee . . . has no estate in the land."); *Rosenstiel v. Rosenstiel*, 20 A.D.2d 71, 76 (N.Y. App. Div. 1963) ("[A] licensee is one who enters upon or occupies lands by permission, express or implied, of the owner . . . . without possessing any interest in the property, and who becomes a trespasser thereon upon revocation of the permission or privilege.").

Consistent with this principle, New York state and federal courts have routinely held that "'[w]hile it is true

24

that *tenants* . . . may be evicted only through lawful procedure, others, such as licensees and squatters, who are covered by RPAPL 713 are not so protected.'" *E.g.*, *Paulino v. Wright*, 210 A.D.2d 171, 172 (N.Y. App. Div. 1994) (emphasis added) (quoting *P & A Bros., Inc.*, 184 A.D.2d at 268); *see also Gladsky*, 2007 WL 2769494, at *8 (citing *Carter*, 861 F. Supp. at 334); *Visken v. Oriole Realty Corp.*, 305 A.D.2d 493, 494 (N.Y. App. Div. 2003) ("Since the plaintiff was a mere licensee . . . , Oriole, as owner, had an owner's common-law right to oust [the plaintiff] without legal process."). Thus, even as a self-proclaimed "licensee," Plaintiff enjoyed no legally cognizable or constitutionally protected possessory right to the Apartment, and his due process claim therefore fails. Indeed, this conclusion is consistent with, and further reinforced by, Judge Chin's previous determination in Civil Court that Plaintiff had "no independent right to possession of the NYCHA apartment" and was therefore not entitled to be restored to possession of the Apartment. (Chin Order.)

Relying on N.Y. Real Prop. Acts. Law § 713(7), Plaintiff submits that, as a licensee, he was entitled to ten-days notice before being evicted from the Apartment. (*See* Pl. Opp. at 5 ("Under RPAPL § 713(7), a licensee must be provided with ten days notice.").) Plaintiff is mistaken. N.Y. Real Prop. Acts. Law § 713(7) provides that

25

> A special proceeding may be maintained . . .
> after a ten-day notice to quit has been
> served upon the respondent in the manner
> prescribed in section 735, upon the
> following grounds:
>
> . . .
>
> He is a licensee of the person entitled to
> possession of the property at the time of
> the license, and (a) his license has
> expired, or (b) his license has been revoked
> by the licensor, or (c) the licensor is no
> longer entitled to possession of the
> property; provided, however, that a
> mortgagee or vendee in possession shall not
> be deemed to be a licensee within the
> meaning of this subdivision.

Contrary to Plaintiff's contention, § 713 does not obligate landlords to provide notice to licensees prior to eviction from a premises; nor does § 713 confer upon licensees a constitutionally protected property interest in or legal right to that premises. *De Villar v. City of New York*, 628 F. Supp. 80, 84 (S.D.N.Y. 1986) ("Although the Constitution has been much trivialized, it has not progressed to the point where every notice provision of state real property law has become a matter of constitutional right, even when a municipality is landlord . . . ." (citation omitted)); *see also Anderson v. N.Y. City Hous. Auth.*, No. 91-CV-2584, 1995 WL 571375, at *6 (S.D.N.Y. Sept. 28, 1995) (rejecting claim that § 713 provides illegal occupants a constitutionally protected entitlement). Instead, § 713 is part of an *optional* summary eviction scheme that "merely permits a

26

special proceeding as an additional means of effectuating the removal of nontenants," such as licensees. *P & A Bros., Inc.*, 184 A.D.2d at 268 (citing *Bliss v. Johnson*, 73 N.Y. 529, 534 (1878)); *see also Walls v. Giuliani*, 916 F. Supp. 214, 219-20 (E.D.N.Y. 1996) (citing *De Villar*, 628 F. Supp. at 84). Indeed, New York state courts have repeatedly clarified that § 713 "does not replace an owner's common-law right to oust an interloper without legal process." *E.g.*, *P & A Bros., Inc.*, 184 A.D.2d at 268 (citing *Bliss*, 73 N.Y. at 534); *see also Gladsky*, 2007 WL 2769494, at *8 ("Although RPAPL 713 does permit a special proceeding as an additional means of effectuating the removal of a nontenant, such as a licensee, it does not replace an owner's common-law right to oust an interloper without legal process." (internal quotation marks omitted)). Accordingly, any alleged failure to comply with the ten-day notice provision in § 713 does not result in any deprivation of Plaintiff's property interests and therefore cannot give rise to a procedural due process claim. *Anderson*, 1995 WL 571375, at *6; *cf. Brody v. Moan*, 551 F. Supp. 443, 446 (S.D.N.Y. 1982) (rejecting plaintiffs' argument "that a single instance of alleged failure to comply with the service provisions of a facially valid statute or procedure constitutes a constitutional violation under § 1983").

Equally as unavailing is Plaintiff's reliance upon *Escalera v. New York City Housing Authority*, 425 F.2d 853 (2d Cir. 1970) for the tenuous proposition that he was entitled to due process before being evicted from the Apartment. (*See* Pl. Opp. at 4 ("Tenants in public housing cannot be deprived of continued tenancy without the due process of law.").)   In *Escalera*, the Second Circuit held that the "government cannot deprive a private citizen of his continued tenancy, without affording him adequate procedural safeguards even if public housing could be deemed to be a privilege." 425 F.2d at 861. *Escalera*, however, is inapposite.   Notably, "[t]he constitutional rights of non-tenant occupants, such as squatters or *licensees* were not at issue and were not considered" in *Escalera*. *Anderson*, 1995 WL 571375, at *5 (emphasis added). Unlike in *Escalera*, where the plaintiffs were *tenants* in New York City public housing projects challenging the constitutionality of NYCHA's procedures for termination of tenancy and for imposition of additional rent charges, Plaintiff here claims that he was a licensee, rather than a tenant, and allegedly occupied the Apartment only at the invitation of former NYCHA tenant, Ms. Phillips. (Pl. Opp. at 3, 5.)   Because Plaintiff "was not a tenant, and the procedures at issue in *Escalera* are not implicated here, that case is completely

irrelevant to this one" and does not salvage Plaintiff's meritless due process claim. *Anderson*, 1995 WL 571375, at *5.

### ii.    Process Afforded to Plaintiff

Even assuming without deciding that Plaintiff enjoyed some constitutionally protected property interest in the Apartment, as a licensee or otherwise, the court nevertheless finds that Plaintiff has failed to allege sufficient facts to support a plausible inference that he was deprived of that property interest without due process.  "The Due Process Clause does not protect against all deprivations of constitutionally protected interests in life, liberty, or property, 'only against deprivations without due process of law.'" *Rivera-Powell v. N.Y. City Bd. of Elections*, 470 F.3d 458, 464 (2d Cir. 2006) (quoting *Parratt v. Taylor*, 451 U.S. 527, 537 (1981)).  "An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)). Three factors must be balanced to determine whether Plaintiff was afforded due process:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or

29

> substitute procedural safeguards; and
> finally, the Government's interest,
> including the function involved and the
> fiscal and administrative burdens that the
> additional or substitute procedural
> requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Based on the allegations in Plaintiff's Second Amended Complaint, Plaintiff received meaningful process under state law to challenge his eviction and therefore cannot plead a cognizable due process claim. Applying the *Mathews* factors to the instant case, the court finds that Plaintiff's property interest in the Apartment, if any, is minimal at best; that the risk of an erroneous deprivation through the ample landlord-tenant procedures available under New York state law is low; and that the additional burden imposed on the government far outweighs the probable value, if any, of the additional procedural safeguards, including notice, requested by Plaintiff. Indeed, Plaintiff alleges that he availed himself of available state law procedures in New York City Housing Court by filing a petition requesting that he be restored to possession of the Apartment. (SAC ¶ 18; *see also* OTSC; OTSC Pet.; IFP Aff.)  That Plaintiff was ultimately unsuccessful in this attempt to gain possession of the Apartment does not alter the fact that he received adequate process through which to challenge his eviction from the Apartment.

The court acknowledges that there is some uncertainty regarding whether Plaintiff's state court proceeding in Civil Court constitutes a pre-deprivation or post-deprivation remedy for purposes of due process analysis.  This distinction does not alter the outcome in this case.  Construed as either a pre-deprivation or post-deprivation remedy, the state court proceeding before Judge Chin, taken together with other state court procedures available under New York law, afforded Plaintiff with a meaningful opportunity to challenge his eviction and regain possession of the Apartment.  Nevertheless, based upon the allegations in Plaintiff's Second Amended Complaint and the parties' submissions, the court finds that Plaintiff's state court proceeding is better understood as a post-deprivation remedy because Plaintiff's "eviction" on August 19, 2010 preceded his state court proceeding on August 23, 2010. (*See* SAC ¶¶ 14-15, 17-18; Pl. Opp. at 1; NYCHA Mem. at 10; City Defs. Mem. at 3-4.)

Characterized as a post-deprivation remedy, the state court proceeding in Civil Court provided Plaintiff with constitutionally adequate process.  "Generally, an alleged deprivation of liberty or property is not cognizable under § 1983 when adequate post-deprivation state remedies exist to protect the victim's procedural due process rights." *Odom v. Baker*, No. 02-CV-757, 2008 WL 281789, at *3 (W.D.N.Y. Jan. 31,

31

2008).  Notably, "an adequate post-deprivation remedy is a
defense to a Section 1983 due process claim only where the
deprivation is random and unauthorized." *Alexandre v. Cortes*,
140 F.3d 406, 411 (2d Cir. 1998) (internal quotation marks
omitted).  By contrast, where "the deprivation is pursuant to an
established state procedure, the state can predict when it will
occur and is in the position to provide a pre-deprivation
hearing," *Rivera-Powell*, 470 F.3d at 465, and "the availability
of post-deprivation procedures will not, *ipso facto*, satisfy due
process," *Hellenic Am. Neighborhood Action Comm. v. City of New
York*, 101 F.3d 877, 880 (2d Cir. 1996).

Here, Plaintiff alleges, albeit in a conclusory
manner, that Officer O'Brien and Sergeant Merrick "had no
authority to remove" him from the Apartment, (SAC ¶ 19), that
these officers "knew they should not have evicted him," (*id.*
¶ 20), and that the eviction was unlawful, (*id.* ¶ 22).  These
allegations establish that Officer O'Brien's and Sergeant
Merrick's purported actions were "random and unauthorized" and
were not carried out pursuant to any established state court
procedure. *See Alexandre*, 140 F.3d at 411.  In fact, Plaintiff's
procedural due process claim largely rests on the assertion that
Officer O'Brien and Sergeant Merrick flouted certain state court
notice procedures. (*See* Pl. Opp. at 4-5.)  Thus, Plaintiff's
Civil Court proceeding, viewed as a post-deprivation remedy,

32

provided sufficient process by which Plaintiff could have, and did, challenge his eviction. *See Rosado v. Dudio*, No. 83-CV-2407, 1984 WL 1083, at *3 (S.D.N.Y. Dec. 21, 1984) ("Because New York law provides posteviction remedies to regain possession, treble damages in some cases, and even a pre-eviction summary proceeding to halt the 'eviction,' this Court finds as a matter of law that these procedures more than protect against an erroneous deprivation."). Plaintiff's due process claim therefore fails.

This determination is reinforced by the district court's decision in *Felix v. Gotham Real Estate Corporation*, No. 12-CV-4559, 2012 WL 4563097, at *4 (E.D.N.Y. Oct. 2, 2012). There, the plaintiffs, former homeowners, alleged that they were evicted without proper notice or process and that the defendants filed affidavits in New York City Housing Court falsely averring that pre-eviction service was effectuated on the plaintiffs. *Id.* at *1, 4. Rejecting the plaintiffs' procedural due process claim, Judge Allyne Ross concluded that the plaintiffs, despite the alleged lack of notice, were afforded adequate process because "[s]tate law . . . provided plaintiffs with a means to challenge defendants' alleged violation of New York's notice provisions." *Id.* In particular, Judge Ross reasoned that the "plaintiffs could have availed themselves of the 'continuing jurisdiction of the Civil Court,' and could have further

appealed that court's judgment to higher New York Courts." *Id.*
(citations omitted) (quoting *Stern v. Regency Towers, LLC*, 886
F. Supp. 2d 317, 324 (S.D.N.Y. 2012)).

Like the plaintiffs in *Felix*, Plaintiff here could
have availed himself of the continuing jurisdiction of the Civil
Court to challenge both his eviction from the Apartment as well
as Defendants' failure to provide him with adequate notice.  In
fact, Plaintiff did so by filing an Order to Show Cause
requesting that he be restored to possession of the premises
based in part on the fact that Defendants failed to provide him
with notice.  After his request was denied by Judge Chin due to
Plaintiff's lack of a possessory interest in the Apartment,
Plaintiff filed a notice of appeal, but ultimately abandoned
that appeal before commencing the instant action.  Plaintiff had
at his disposal the full range of process offered under New York
law, including "posteviction remedies to regain possession,
treble damages in some cases, and even a pre-eviction summary
proceeding to halt the 'eviction.'" *Rosadio*, 1984 WL 1083, at
*4.  The availability of "these procedures more than protect[s]
against an erroneous deprivation," and it cannot be said that
Plaintiff lacked meaningful process by which to challenge his
eviction from the Apartment or the NYPD officers' failure to
provide him with pre-eviction notice.  Plaintiff's Second

34

Amended Complaint therefore fails to state a cognizable due process claim under § 1983.

### b.    Excessive Force

Plaintiff's Second Amended Complaint also fails to sufficiently plead a Fourth Amendment excessive force claim under § 1983.[13]  A claim that a law enforcement officer has used excessive force "in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989); *see also Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006).  "Because the test is now one of objective reasonableness — without any reference to the officers' subjective state of mind — a motion to dismiss an excessive force claim is appropriate if, accepting all of the allegations as true, it is clear that the force used by the officers was objectively reasonable under the circumstances." *Messina v. Mazzeo*, 854 F. Supp. 116, 128-29 (E.D.N.Y. 1994) (citing *Roundtree v. City of New York,* 778 F. Supp. 614 (E.D.N.Y. 1991)).  Stated differently, granting "a motion to dismiss an excessive force claim is only appropriate when it is

---

[13] Notably, in his Second Amended Complaint, Plaintiff neither invokes the Fourth Amendment nor mentions the words "excessive force." (*See generally* SAC.)  Moreover, in his Opposition, Plaintiff appears to characterize his "excessive force" claim as a cause of action under N.Y. Real Prop. Acts. Law § 853, rather than under the Fourth Amendment and § 1983. (Pl. Opp. at 10-11.)  Nevertheless, in an abundance of caution and notwithstanding that Plaintiff is represented by counsel, the court liberally construes Plaintiff's allegations to raise a Fourth Amendment excessive force claim under § 1983.

clear that the violence at issue is an isolated incident which,
when taking into account all of the circumstances, establishes
that excessive force was not used." *Id.* at 129.

In his Second Amended Complaint, Plaintiff does not
allege that he was arrested, physically injured, assaulted,
subjected to any physical violence, or even touched by Officer
O'Brien or Sergeant Merrick during his eviction from the
Apartment. (*See generally* SAC.)  Instead, Plaintiff's excessive
force claim rests on the allegation that NYPD officers
"threatened to use force to arrest and evict him if he did not
leave the premises." (*Id.* ¶ 17; *see also* Pl. Opp. at 1.)
Plaintiff's lone allegation is insufficient to support a
cognizable excessive force claim.  Indeed, courts in this
Circuit have long held that "mere verbal abuse is not a § 1983
violation, insofar as the [m]ere threatening language and
gestures of a custodial officer do not, even if true, amount to
constitutional violations." *Murphy v. Pizarrio*, No. 94-CV-471,
1995 WL 565990, at *3 (S.D.N.Y. Sept. 22, 1995) (alteration in
original) (internal quotation marks and citation omitted).
Moreover, "threat[s] of force . . . do[] not support an
excessive force claim." *Smith v. Fields*, No. 95-CV-8374, 2002 WL
342620, at *5 (S.D.N.Y. Mar. 4, 2002) (citing *Aderonmu v.
Heavey*, No. 00-CV-9232, 2001 WL 77099, at *3 (S.D.N.Y. Jan. 26,
2001)); *see also Easton v. City of New York*, No. 05-CV-1873,

2009 WL 1767725, at *4 n.5 (E.D.N.Y. June 23, 2009) (noting that whereas "other circuits have occasionally recognized excessive-force claims even where no physical contact occurred," the Second Circuit "has never before recognized such a claim"); *Pina v. City of Hartford*, No. 07-CV-657, 2009 WL 1231986, at *8 (D. Conn. Apr. 29, 2009) ("The plaintiffs cite no authority stating that use of profanities and threats are alone enough to mount an excessive force claim"). Because Plaintiff alleges nothing beyond mere threats of force, Plaintiff's excessive force claim fails.

In any event, even if an excessive force claim predicated solely upon mere threats of force were actionable in the Second Circuit, Plaintiff's Second Amended Complaint still falls far short of adequately pleading an excessive force claim or any claim under the Fourth Amendment. Plaintiff proffers no facts rendering plausible the inference that the officers' threats were objectively unreasonable. (*See generally* SAC.) Apart from Plaintiff's vague assertion that Officer O'Brien and Sergeant Merrick threatened to use force during the eviction, the Second Amended Complaint lacks any factual allegations regarding the nature, degree, and severity of those threats, which specific officer or municipal employee made those threats, and the extent to which those threats were unreasonable. Absent such factual enhancement, Plaintiff does not plausibly assert

that Officer O'Brien's and Sergeant Merrick's alleged threats
constituted constitutionally impermissible excessive force.
Indeed, even accepting Plaintiff's conclusory and vague
allegations as true, the court finds that "it is clear that the
force used by the officers" – here no force – "was objectively
reasonable under the circumstances." *Messina*, 854 F. Supp. at
128-29.

In addition, at least one court in this district has
held that, even if a threat could "constitute excessive force in
violation of the Fourth Amendment . . . the very uncertainty
surrounding this question entitles the defendant[s] to qualified
immunity." *Snoussi v. Bivona*, No. 05-CV-3133, 2008 WL 3992157,
at *6 (E.D.N.Y. Aug. 22, 2008) (citations omitted) (granting
motion to dismiss excessive force claim on qualified immunity
grounds).  Thus, even assuming without deciding that Plaintiff
could state a cognizable excessive force claim based solely on
threats of force, Officer O'Brien and Sergeant Merrick would
nevertheless be shielded from liability on such a claim by
qualified immunity. *See id.* ("Because of the considerable
uncertainty revealed in the case law [of other circuits], this
Court cannot find that defendant Bivona's alleged threats . . .
constitute the violation of a clearly established constitutional
right.").  Plaintiff's Fourth Amendment excessive force claim
must therefore be dismissed.

38

c.   **Abuse of Process**

Although not addressed by any of the parties, the court finds that Plaintiff's abuse of process claim also fails as a matter of law and must be dismissed.  In his Second Amended Complaint, Plaintiff alleges that the "actions of [D]efendants, acting under color of State law, deprived [him] of . . . the right[] to be free from abuse of process." (SAC ¶ 29.)  Aside from the fact that this allegation is wholly conclusory and therefore insufficient to sustain a plausible abuse of process claim, Plaintiff's claim "fails because a claim for malicious abuse of *civil* process is not cognizable under 42 U.S.C. § 1983." *D'Onofrio v. City of New York*, No. 07-CV-731, 2010 WL 4673879, at *9 (E.D.N.Y. Sept. 14, 2010) (citing *Green v. Mattingly*, 585 F.3d 97, 104 (2d Cir. 2009)), *adopted by* 2010 WL 4673948 (E.D.N.Y. Nov. 5, 2010); *see also Bartoszewski v. Town of Hannibal*, No. 09-CV-1453, 2012 WL 3822014, at *4 (N.D.N.Y. Sept. 4, 2012) ("In the Second Circuit, a claim for malicious abuse of *civil* process is not cognizable under 42 U.S.C. § 1983." (internal quotation marks omitted)).  Indeed, the "Second Circuit only recognizes claims for malicious abuse of *criminal* process under 42 U.S.C. § 1983." *D'Onofrio*, 2010 WL 4673879, at *9 (citing *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994)); *Scheiner v. Wallace*, 860 F. Supp. 991, 999 (S.D.N.Y. 1994) ("Section 1983 liability attaches where there is criminal

liability, such as a malicious prosecution claim. However, such liability does not extend to civil, or abuse of process, cases." (citing *Spear v. Town of W. Hartford*, 954 F.2d 63, 68 (2d Cir. 1992)). Because Plaintiff's Second Amended Complaint asserts a claim for abuse of civil, rather than criminal, process, Plaintiff's abuse of process claim fails.

### 2. Municipal Liability Claims Against NYCHA and the City

To state a § 1983 claim "against a municipal defendant, such as the City of New York and the New York City Housing Authority," Plaintiff must allege "the existence of an officially adopted policy or custom that caused injury and a direct causal connection between that policy or custom and the deprivation of a constitutional right." *Johnson v. City of New York*, No. 12-CV-2484, 2012 WL 1828072, at *2 (E.D.N.Y. May 18, 2012) (citing *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 692 (1978); *Testagrose v. N.Y. City Hous. Auth.*, No. 06-CV-614, 2009 WL 935722, at *4 n.8 (E.D.N.Y. Mar. 31, 2009) ("To prevail on a Section 1983 claim against NYCHA, a municipal entity, [Plaintiff] must identify a municipal policy or custom that caused [his] injury."), *aff'd*, 369 F. App'x 231 (2d Cir. 2010) (summary order). "[M]ere assertions that a municipality has a custom or policy of violating constitutional rights are insufficient to state a Section 1983 claim 'in the

absence of allegations of fact tending to support, at least circumstantially, such an inference.'" *Davis v. Cnty. of Nassau*, 355 F. Supp. 2d 668, 678 (E.D.N.Y. 2005) (quoting *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993)). The alleged "custom and policy must be described with factual specificity, rather than bare and conclusory statements." *Perez v. Metro. Transp. Auth.*, No. 11-CV-8655, 2012 WL 1943943, at *4 (S.D.N.Y. May 29, 2012) (citing *Perez v. Cnty. of Westchester*, 83 F. Supp. 2d 435, 438 (S.D.N.Y. 2000), *aff'd*, 242 F.3d 367 (2d Cir. 2000) (summary order)).

Moreover, for a municipal defendant to be liable under § 1983 for failure to discipline its employees, Plaintiff must also allege that NYCHA's and the City's failure to discipline "amounts to deliberate indifference to the rights of persons with whom the police [and municipal employees] come into contact." *E.g.*, *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 538 (S.D.N.Y. 2012) ("A municipality may be liable for the failure to supervise or discipline its employees only where the need to act is so obvious, and the inadequacy of the current practices so likely to result in a deprivation of federal rights, that the municipality or official can be found deliberately indifferent to the need." (internal quotation marks omitted)).

41

In this case, Plaintiff's Second Amended Complaint
fails to state a plausible § 1983 municipal liability claim
against NYCHA and the City for two reasons.  First, because, as
set forth above, Plaintiff has not properly pled any underlying
constitutional violations by any municipal employee, "there is
no basis on which [Plaintiff] could predicate *Monell* liability"
against NYCHA or the City. *E.g.*, *Crippen v. Town of Hempstead*,
No. 07-CV-3478, 2013 WL 1283402, at *16 (E.D.N.Y. Mar. 29,
2013).  "Absent an underlying constitutional violation, a
district court need not address the possibility of municipal
liability." *Sharpe v. City of New York*, No. 11-CV-5494, 2013 WL
2356063, at *9 (E.D.N.Y. May 29, 2013) (citing *Segal v. City of
New York*, 459 F.3d 207, 219 (2d Cir. 2006)). Consequently,
Plaintiff's municipal liability claims against NYCHA and the
City necessarily fail.

Second, even assuming *arguendo* that Plaintiff
satisfactorily alleged that Officer O'Brien, Sergeant Merrick,
or any other municipal employee committed an actionable
constitutional violation, Plaintiff has nevertheless failed to
plead sufficient facts to give rise to a plausible municipal
liability claim against NYCHA or the City.  In his Second
Amended Complaint, Plaintiff alleges that the City and NYCHA
each adopted a policy and practice of failing to sanction or
discipline officers who violate constitutional rights or who are

42

aware of and conceal such violations. (*See* SAC ¶¶ 27-28.)
Plaintiff's conclusory allegations, however, are insufficient to
sustain a plausible municipal liability claim against NYCHA or
the City. *Sherwyn Toppin Mktg. Consultants, Inc. v. City of New
York*, No. 08-CV-1340, 2013 WL 685382, at *5 (E.D.N.Y. Feb. 25,
2013) ("[B]oilerplate allegations of unconstitutional policies
and practices are insufficient to survive a motion to dismiss
for failure to state a claim." (internal quotation marks
omitted)).  Although Plaintiff broadly asserts that the City
and NYCHA maintain a policy and practice of failing to
discipline municipal employees, Plaintiff fails to allege any
facts to support these naked and speculative allegations, which
amount to nothing more than threadbare recitals of the elements
of a municipal liability claim.  Indeed, Plaintiff's Second
Amended Complaint is devoid of any examples of NYCHA's or the
City's chronic and widespread failure to discipline municipal
employees who violate constitutional rights.  Rather, to support
his tenuous failure-to-discipline claim against NYCHA and the
City, Plaintiff appears to rely on a single and isolated event:
his own eviction at the hands of NYPD officers and NYCHA
employees.  "However, a municipal *policy* cannot be inferred from
a failure to discipline [police officers] for a single incident
of illegality such as a first arrest without probable cause or
with excessive use of force . . . ." *DiGenarro v. Town of Gates*

43

*Police Dep't*, No. 07-CV-6426, 2013 WL 3097066, at *14 (W.D.N.Y.
June 18, 2013) (internal quotation marks omitted); *Rodriguez v.
City of New York*, No. 10-CV-1849, 2011 WL 4344057, at *5
(S.D.N.Y. Sept. 7, 2011) ("[T]he facts provided in connection
with the single incident experienced by the plaintiff do[] not
put the City on notice as to what its policymakers have done or
failed to do that amount to deliberate indifference to
unconstitutional conduct by its police force."); *Davis*, 355 F.
Supp. 2d at 678 ("A single incident involving an employee below
the policymaking level will generally not suffice to support an
inference of a municipal custom or policy, absent factual
allegations tending to support, at least circumstantially, such
an inference." (citations and internal quotation marks
omitted)). As such, Plaintiff's allegations "are insufficient to
support an inference that the [City or NYCHA were] 'on notice'
of misconduct by its [employees], but failed to act, such that
the [City or NYCHA] exhibited deliberate indifference to the
constitutional rights of its citizens." *Triano*, 895 F. Supp. 2d
at 539 (citing *Missel v. Cnty. of Monroe*, 351 F. App'x 543, 546
(2d Cir. 2009)).

Nor has Plaintiff plausibly alleged that the purported
constitutional deprivations that he suffered "'occurred as a
result of a [governmental] policy rather than as a result of
isolated misconduct by a single act.'" *Reynolds v. Giuliani*, 506

44

F.3d 183, 207 (2d Cir. 2007) (alteration in original) (quoting
*Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 130 (2d Cir.
2004)); *see also id.* ("Demonstrating that a governmental entity
was deliberately indifferent to citizens' rights is not enough
to hold it liable under § 1983; [Plaintiff] must still prove
that the [failure to act] actually caused their injury."
(internal quotation marks omitted)).  Plaintiff merely asserts,
without further factual enhancement, that the constitutional
violations he suffered occurred as a result of the City's and
NYCHA's policy of failing to discipline or sanction its
respective employees. (*See* SAC ¶¶ 27-28.)  These bald and
conclusory allegations are insufficient to render plausible
Plaintiff's municipal liability claims.

Although Plaintiff cursorily recites certain elements
of a municipal liability claim under § 1983, his Second Amended
Complaint does not set forth any factual basis for imposing
liability upon NYCHA or the City.  Accordingly, notwithstanding
Plaintiff's attempt to circumvent his pleading deficiencies by
requesting "discovery into the policies of the defendants," (Pl.
Opp. at 12), Plaintiff's § 1983 claims against NYCHA and the
City must be dismissed for failure to state a claim upon which
relief may be granted.

45

### 3.   Section 1983 Conspiracy Claims Against All Defendants

Finally, Plaintiff's allegations are also insufficient to state a plausible conspiracy claim under § 1983 against NYCHA, the City, Officer O'Brien, and Sergeant Merrick. "To state a § 1983 conspiracy claim, a plaintiff must allege (1) an agreement between two or more state actors, (2) 'to act in concert to inflict unconstitutional injury,' and (3) 'an overt act done in furtherance of that goal causing damages.'" *Barnes v. Abdullah*, No. 11-CV-8168, 2013 WL 3816586, at *9 (S.D.N.Y. July 22, 2013) (quoting *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002)); *Sibiski v. Cuomo*, No. 08-CV-3376, 2010 WL 3984706, at *6 (E.D.N.Y. Sept. 15, 2010) (citing same). Notably, "[v]ague and conclusory allegations that defendants have engaged in a conspiracy to violate plaintiff's constitutional rights must be dismissed." *Poole v. New York,* No. 11-CV-921, 2012 WL 727206, at *6 (E.D.N.Y. Mar. 6, 2012); *see also Krug v. McNally*, 368 F. App'x 269, 270 (2d Cir. 2010) ("[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." (alteration in original) (internal quotation marks omitted)).

Plaintiff "must allege . . . overt acts which defendants engaged in which were reasonably related to the promotion of the alleged conspiracy." *Elmasri v. England,* 111 F. Supp. 2d 212, 218 (E.D.N.Y. 2000) (internal quotation marks omitted).

Plaintiff's allegations fail to state a § 1983 conspiracy claim for several reasons.  First, as previously determined, Plaintiff has not sufficiently alleged an underlying constitutional violation in his Second Amended Complaint. Therefore, Plaintiff's § 1983 conspiracy claim fails as a matter of law. *AK Tournament Play, Inc. v. Town of Wallkill*, No. 09-CV-10579, 2011 WL 197216, at *4 (S.D.N.Y. Jan. 19, 2011) ("Plaintiffs' § 1983 conspiracy claims against all Defendants must be dismissed because Plaintiffs have failed to allege any violation of any cognizable constitutional right."), *aff'd*, 444 F. App'x 475 (2d Cir. 2011) (summary order); *Mitchell v. Cnty. of Nassau*, 786 F. Supp. 2d 545, 564 (E.D.N.Y. Mar. 24, 2011) ("[A] § 1983 conspiracy claim fails as a matter of law where there is no underlying constitutional violation.").

Second, even if Plaintiff had adequately alleged an underlying violation of a constitutional right, Plaintiff does not plausibly allege the existence of any agreement or meeting of the minds, either explicit or implicit, between NYCHA, the City, Officer O'Brien, and Sergeant Merrick to deprive him of his constitutional rights.  Indeed, "there is not a single

47

allegation as to when, where, or how this conspiracy was formed. This failure, of course, ignores the basic requirement that there be an agreement or meeting of the minds between the conspirators." *Pollack v. Nash,* 58 F. Supp. 2d 294, 302 (S.D.N.Y. 1999); *see also Garcia-Garcia v. City of New York*, No. 12-CV-1302, 2013 WL 3832730, at *9 (S.D.N.Y. July 22, 2013) ("The essential element of a conspiracy claim is an agreement to deprive a Plaintiff of his constitutional rights.  Without a meeting of the minds, the independent acts of two or more wrongdoers do not amount to conspiracy." (internal quotation marks omitted)).  Absent nonconclusory allegations that there was a "meeting of the minds" between Defendants to deprive Plaintiff of his constitutional rights, Plaintiff's Second Amended Complaint, which contains only vague references to a conspiracy among Defendants and baseless assertions that Defendants worked together to evict him, fails to state a plausible § 1983 conspiracy claim. *See AK Tournament Play, Inc*., 2011 WL 197216, at *4 ("Plaintiff['s] Complaint is still deficient . . . because it fails to plead any facts that would point to the existence of any 'meeting of the minds' between [municipal] employees to deprive Plaintiff[] of any constitutional right.").

Third, Plaintiff does not proffer any nonconclusory facts regarding the nature of the conspiracy or the overt steps

taken in furtherance of that conspiracy.  Apart from "diffuse
and expansive allegations" that are not "amplified by specific
instances of misconduct," *Krug*, 368 F. App'x at 270 (internal
quotation marks omitted), the Second Amended Complaint is bereft
of any facts sufficient to give rise to a plausible § 1983
conspiracy claim.  In fact, the few references in the Second
Amended Complaint to a conspiracy are Plaintiff's vague
assertions that Defendants "worked in unison to unlawfully
evict" him and "conspired among themselves to deprive plaintiff
of his constitutional [rights] and took numerous overt steps in
furtherance of such conspiracy." (SAC ¶¶ 20, 35.)  Plaintiff's
bald allegations, however, do not give rise to a plausible
inference that Defendants conspired to violate Plaintiff's
constitutional rights either before or during his eviction and
took overt steps to effectuate that conspiracy.  To the
contrary, the speculative allegations in Plaintiff's Second
Amended Complaint "constitute the type of vague, conclusory, and
general allegations that, standing alone, are routinely found
lacking under Rule 12(b)(6)." *Orr ex rel. Orr v. Miller Place
Union Free Sch. Dist.*, No. 07-CV-787, 2008 WL 2716787, at *5
(E.D.N.Y. July 9, 2008) (internal quotation marks omitted);
*Rodriguez v. City of New York*, No. 08-CV-4173, 2012 WL 1059415,
at *13 (E.D.N.Y. Mar. 28, 2012) (dismissing plaintiff's § 1983

conspiracy claim on ground that claim was based on "vague and broad references" and "sheer speculation").

Accordingly, Plaintiff's § 1983 conspiracy claims against NYCHA, the City, Officer O'Brien, and Sergeant Merrick are inadequately pled and must be dismissed for failure to state a claim.

### C. Leave to Replead § 1983 Claims

Plaintiff is not entitled to replead the facially deficient § 1983 claims in his Second Amended Complaint.  The court is mindful that, pursuant to Rule 15(a)(2), it "should freely give leave [to amend a pleading] when justice so requires." *In re Advanced Battery Techs., Inc. Sec. Litig.*, No. 11-CV-2279, 2013 WL 3784134, at *5 (S.D.N.Y. July 18, 2013) (alteration in original) (internal quotation marks omitted). Nevertheless, the court is equally mindful that leave to replead should be denied when amendment would be futile or when Plaintiff has repeatedly failed to cure the deficiencies in his pleadings. *Id.* (citing *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 127 (2d Cir. 2007)); *Gargiulo v. Forster & Garbus Esqs.*, 651 F. Supp. 2d 188, 192 (S.D.N.Y. 2009) ("I may deny leave to replead when the plaintiff has repeatedly failed to cure the deficiencies in his complaint or when amendment would be futile.").

In this case, the court finds that Plaintiff has repeatedly failed to cure the deficiencies in his complaint and that further amendment would be futile.  After amending his complaint twice to allege further factual material and to add individual defendants to this suit, Plaintiff has yet again crafted a deficient pleading, rife with conclusory allegations and baseless claims, in a misguided attempt to seek relief for his eviction from an apartment in which he enjoys no property interest.  Moreover, even assuming without deciding that Plaintiff could have alleged additional facts sufficient to surmount a motion to dismiss, he could have and should have done so in his First and Second Amended Complaints.  Having failed to do so, Plaintiff does not deserve a fourth opportunity to assert his baseless § 1983 claims against Defendants, and leave to replead the meritless federal claims alleged in Plaintiff's Second Amendment Complaint is therefore denied.

## III. <u>Plaintiff's State and City Law Claims</u>

"[A] federal court should generally decline to exercise supplemental jurisdiction over state law claims if, as is the case here, the complaint asserts federal question jurisdiction but not diversity jurisdiction, and the complaint's federal claims are dismissed in the litigation's 'early stages.'" *Parker Waichman LLP*, 2013 WL 3863928, at *5 (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)); *see*

*also* 28 U.S.C. § 1367(c)(3).  Having dismissed all of Plaintiff's federal § 1983 claims with prejudice, the court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law and city law claims and therefore dismisses those claims without prejudice.

### CONCLUSION

For the foregoing reasons, the court grants NYCHA's motion to dismiss and the City Defendants' motion for judgment on the pleadings, dismisses Plaintiff's federal § 1983 claims with prejudice, declines to exercise supplemental jurisdiction over Plaintiff's remaining state and city law claims, and denies Plaintiff's request to file his Third Amended Complaint *nunc pro tunc*.  The Clerk of the Court is respectfully requested to enter judgment in favor of Defendants and to close this case.

**SO ORDERED.**

**Dated**:      August 28, 2013
            Brooklyn, New York

_____/s/_____
**KIYO A. MATSUMOTO**
United States District Judge
Eastern District of New York